## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 22-CR-430 |
| | : | |
| JUAN CARLOS VENTURA AMPARO | : | |
| *Defendant.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                    **December 11, 2023**

### I.      INTRODUCTION

On November 30, 2022, Defendant Juan Carlos Ventura-Amparo ("Defendant") was indicted by a federal grand jury on a charge of attempted possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One). *See* ECF No. 8. Before the Court is Defendant's Motion to Suppress (ECF No. 42), filed on September 5, 2023, which asks this Court to suppress the statement Defendant gave to law enforcement officials on November 1, 2022 after his arrest.[1] The Government filed a Response in Opposition to the Motion on September 19, 2023 (ECF No. 44) to which Defendant filed a Reply on September 21, 2023 (ECF No. 46). On October 4, 2023, the Court held a suppression hearing at which Philadelphia Police Officer Madeline Quinones ("Officer Quinones")[2], Special Agent

---

[1] Defendant's opening brief includes argument about the contents of a cell phone that was retrieved from Defendant when he was arrested. *See* ECF No. 42 at 11-12. At oral argument, defense counsel noted that the Government informed her that it would not seek to introduce any contents of the phone, and so defense counsel did not make argument as to the cell phone search at the hearing. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 5:9-15. Accordingly, the Court will not consider the argument concerning the contents of the cell phone as they are moot.

[2] Though there are various references to "Detective" Quinones, Officer Quinones confirmed at the hearing that her title is "Officer Quinones." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 49:10-12.

Robert Edwards ("Agent Edwards"), and Defendant testified. *See* ECF No. 48. Portions of the 27-minute recorded interrogation Defendant seeks to suppress were also played in Court during the hearing. *See* Gov't Ex. E. For the reasons that follow, the Court will deny Defendant's Motion to Suppress (ECF No. 42).

## II.    BACKGROUND

Defendant was arrested on November 1, 2022 after Homeland Security Investigations ("HSI") Special Agents, the Pennsylvania Attorney General's Office, the Pennsylvania State Police, and the Philadelphia Police Department conducted a controlled delivery of two DHL shipping parcels containing fentanyl. [3] ECF No. 1 ¶¶ 7, 14.

---

[3] In October 2022, Customs and Border Protection in Cincinnati intercepted two parcels containing fentanyl from Mexico. ECF No. 1 ¶ 7. One parcel was addressed to Dinorah Ramos at 4016 Loring Street in Philadelphia, and the other parcel was addressed to Lorena Rojas at 515 West Erie Avenue in Philadelphia. *Id.* The contents of the parcels were transferred to HSI in Philadelphia. *Id.* ¶ 8.

On November 1, 2022, at approximately 10:35 a.m., an undercover agent posing as a DHL delivery driver dropped off the first parcel at the front door of 4016 Loring Street. *Id.* ¶ 9. A few minutes later, a female exited the home and brought the parcel inside. *Id.* Approximately 10 minutes after that, Defendant arrived, knocked on the door, and went inside. *Id.* Approximately 10 minutes later, both the female and Defendant exited the residence and went in separate directions. *Id.* Defendant walked to his vehicle and departed the area. *Id.*

At approximately 11:00 a.m., the undercover agent delivered the other parcel to 515 West Erie Avenue. *Id.* ¶ 10. The parcel was accepted by a male who worked at a barbershop next door; he placed the parcel inside the barbershop. *Id.* Approximately 20 minutes later, Defendant arrived and remained in his vehicle across the street from 515 West Erie Avenue for approximately one hour before departing. *Id.* At approximately 1:20 p.m., Defendant returned to the area of 515 West Erie Avenue accompanied by a female passenger who retrieved the parcel from the barbershop and carried the parcel inside the front door of 515 West Erie Avenue with the help of the barber while Defendant remained inside the vehicle. *Id.* ¶ 11. The female and barber exited 515 West Erie Avenue, and the female and Defendant departed the area in the vehicle. *Id.* At approximately 2:00 p.m., a different female arrived at 515 West Erie Avenue, and a short time later, Defendant arrived with the female who had previously carried the parcel inside the location. *Id.* ¶ 12. Defendant's female passenger met the female waiting outside of 515 West Erie Avenue, and they both went inside the location. *Id.* Defendant remained in the vehicle and then drove away from the area. *Id.*

At approximately 2:30 p.m., Defendant returned to 515 West Erie Avenue and entered the residence. *Id.* ¶ 13. He exited the residence 20 minutes later and returned to his vehicle from which he retrieved tools and then went back inside the residence. *Id.* At approximately 2:50 p.m., agents

After Defendant was taken into custody, he was transported to the Bureau of Narcotics Investigation ("BNI") headquarters at the Pennsylvania Attorney General's Office in Philadelphia. *Id.* ¶ 15; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 14:12-13. Officer Quinones, who testified that she is fluent in Spanish, arrived at BNI headquarters at approximately 4:45 p.m. to act as an interpreter for Defendant. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 9:23-24; 14:12-15; 15:13-17. Officer Quinones testified that she did not have a conversation with Defendant about the facts of the case before presenting Defendant with a form that advised him of his *Miranda* rights. *Id.* at 20:7-14. When she arrived at the conference room in which Defendant was interviewed, she and Defendant "had a general conversation" related to religion and faith that lasted for approximately five to seven minutes. *Id.* at 18:9-10; 20:20-21:10. Officer Quinones testified that she did not ask Defendant any questions before the recorded interview and that Defendant "stopped [Officer Quinones] briefly and told [her] . . . the information he would have would be from the people from Mexico, that's it." *Id.* at 40:16-19. Officer Quinones further testified that, prior to the recorded interview, Defendant asked for water and expressed concern for the females involved in the deliveries of packages that day. *Id.* at 18:20-24.

Defendant testified that he was initially interrogated without being recorded[4] after which Officer Quinones asked Defendant "'Are you willing to do the interrogation and we record you?'"

---

were alerted that the DHL parcel containing fentanyl was opened inside of 515 West Erie Avenue. *Id.* ¶ 14. At 3:08 p.m., agents executed the anticipatory search warrant and took Defendant into custody. *Id.*

[4] Defendant's testimony suggests that Agents Edwards conducted initial unrecorded questioning via Google Translate: "In fact, when we were going down Cottman and crossing the Boulevard because—we were on Cottman Avenue, I began to shake. And [Agent] Robert [Edwards] even says, if you want, I can put on the air, or the heater, turn it up. And then I said I was fine. And then [Agent Edwards] tried to talk to me again, and he was using the phone to translate, the one he had. And we are with him having my documents. [Agent] Robert [Edwards] and [Agent] Martin [Essilfie] leave, and they sit in front of me. And they start to interrogate me. And they ask me all the questions, and they're questioning me. And I answered everything that was there." ECF No.

to which Defendant replied "'Yes, that's fine.'" *Id.* at 94:1-5. Defendant further testified that

Officer Quinones then told Defendant "'Okay, sign this if you're giving your consent so we can

record it'" to which Defendant replied "'Yes, that's fine.'" *Id.* at 94:5-6.

Before law enforcement began recording any conversation with Defendant, Defendant

signed a Pennsylvania Attorney General Office *Miranda* waiver form in the presence of Agent

Edwards, Pennsylvania Attorney General Officer Agent Shawn McClister ("Agent McClister")

and Officer Quinones. ECF No. 42-1 ("Report of Investigation") at 2. That form, entitled

"Notificacion De Sus Derechos y Renuncia"[5] (ECF No. 42-3), is in Spanish[6] and contains writing

in both blue and black ink.[7] The top portion of the form was filled out in blue ink by Officer

Quinones and lists Defendant's name, Defendant's date of birth, Officer Quinones' name, Officer

Quinones' badge number (#7019), Officer Quinones' agency (PPD), the interview location (BNI),

the date (November 1, 2022), and the time (5:15 p.m.). ECF No. 42-3; ECF No. 48, Oct. 4, 2023

Hr'g. Tr. 23:3-17.

At 5:15 p.m., before the recording started, Officer Quinones began reading Defendant his

*Miranda* rights aloud in Spanish. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 25:11-13; Report of

---

48, Oct. 4, 2023 Hr'g. Tr. 93:14-25. It is unclear whether Defendant asserts that this took place in a vehicle after his arrest, or in the conference room in which he was interviewed. However, the Court explains, *infra*, why it does not find Defendant to be a credible witness.

[5] At the hearing, Officer Quinones translated this title as "Notification of Your Rights and Waiver." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 24:5-15.

[6] Officer Quinones testified that she asked for a copy of the *Miranda* form written in Spanish so that Defendant "can read it, so he can understand what was being read to him." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 25:3-4. Officer Quinones did not ask Defendant whether he read and wrote Spanish. *Id.* at 52:17-19. Defendant later testified that he can read and write Spanish, but that he cannot read without his glasses which he did not have with him during the interrogation. *Id.* at 102:4-20.

[7] This form was referred to as Government Exhibit A during the hearing, but the Court will cite to the same form located at ECF No. 42-3 on the case docket.

4

Investigation at 2. Officer Quinones testified that she and Defendant read the form together, meaning that while she read the form out loud, Defendant looked over the form. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 52:20-53:3. Officer Quinones testified that she "went over [the *Miranda* form] with [Defendant], read it, and then [] asked him to initial, and whether it was—if he—if he agreed, write 'Yes' in the language that he knew, which is Spanish, and he did." *Id.* at 25:4-7; *see also* Report of Investigation at 2 ("Before the recording started, Detective Quinones read VENTURA his Miranda Rights aloud in the Spanish language. VENTURA explained he understood his rights and would be willing to answer questions.").

The *Miranda* form contains five statements in Spanish, which Officer Quinones translated into English at the hearing as follows: (1) "I have to explain to you that you have the absolute right to remain silent"; (2) "Anything you say can be used against you in the court of law or any other criminal procedure"[8]; (3) "You have the right to consult with a lawyer before any questions and have one present during your questioning"; (4) "If you can't afford an attorney, one will be afforded to you before any questions being asked of you if you desire"; and (5) "If you decide to respond to any of the—to answer these questions or make a declaration, you have the right to stop at any time and ask for a lawyer at any moment." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 26:18-28:19.

After each statement, the form includes the same two questions which translated into English are: (1) Do you understand your rights; and (2) Do you voluntarily waive your right. *Id.* at 27:2-28:22. Defendant wrote, in black ink, either his initials or the word "si" (yes) after each question. *See* ECF No. 42-3. He then signed his name and wrote the date at the bottom of the form. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 28:23-29:3; ECF No. 42-3.

---

[8] At the hearing, defense counsel noted that the second question on the form reads "Anything that you say or declare could *and will* be used against you in court." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 53:4-16.

The bottom of the form also contains, in blue ink, Officer Quinones' signature and the time of 5:20 p.m.—the time when she finished reading Defendant his rights and when the *Miranda* form was completed. ECF No. 42-3; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 25:24-25; Tr. 31:23-32:1. Beneath Officer Quinones' signature is the badge number of Agent Martin Essilfie signifying that another individual witnessed the waiver of *Miranda*.[9] ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 30:15-31:16.

At approximately 5:21 p.m., Agent Edwards, Agent McClister, and Officer Quinones began their recorded interview of Defendant. Report of Investigation at 2; Gov't Ex. D[10] ("Transcript of Client's Recorded Interview") at 1. Soon after the recording began, Agent Edwards asked Officer Quinones "[S]o have you guys really talked about anything yet?" to which Officer Quinones stated: "No. He . . . he . . . he just started to . . . when I was reading him his rights. He stopped me, he says that . . . umm. He says that the people he would be cooperating [against] are from Mexico. . . . And, I, I told him . . . well actually . . . I told that to [Agent] Martin [Essilfie]—he said that['s] fine, we will deal with it. . . . He still decided he wanted to cooperate so." Transcript of Client's Recorded Interview at 1.

During the recorded interview, Defendant told the law enforcement officers that he had agreed to receive two parcels containing drugs from a man named Omar in exchange for $1000 per kilogram, amounting to two kilogram packages. ECF No. 1. ¶ 15. Defendant explained that he asked the residents of 4016 Loring Street and 515 West Erie Avenue to use their addresses to

---

[9] Agent Essilfie does not speak Spanish. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 55:8-25.

[10] At the hearing, the Government provided a version of the interrogation transcript that includes English translations of all statements and questions originally in Spanish. *See* Gov't Ex. D ("Transcript of Client's Recorded Interview"). Both Defendant's counsel and Government's counsel referred to this transcript of the interrogation during the hearing, as opposed to the transcript attached to Defendant's Motion (ECF No. 42-2).

receive these parcels in exchange for $500. *Id.* Defendant had planned on bringing the parcel from 4016 Loring Street to 515 West Erie Avenue, but the resident of 4016 Loring Street told Defendant that Defendant needed to wait until the resident picked up her children from school. *Id.* Defendant returned to 515 West Erie Avenue where he had trouble locating the one-kilogram package inside of the parcel at which time agents arrived at this door. *Id.* Defendant stated that, if law enforcement had not intervened, he had planned on giving the two kilograms of drugs to an unknown person who would be traveling from Boston. *Id.*

Toward the end of the interview, Agent Edwards asked "Can we go over consent for his phone? . . . If he didn't give it already?", after which another male stated, "I mean he already said we could look but . . ." Transcript of Client's Recorded Interview at 27. Officer Quinones then asked Defendant, in Spanish, whether he had given "permission to go over" the phone, to which Defendant said "Yes," in Spanish. *Id.* Officer Quinones then told Defendant about an additional form to fill out concerning the search of Defendant's phone—the "Consent to Search Cell Phone" form. [11] *Id.*; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 45:9-46:3 (referring to ECF No. 44-2). Officer Quinones explained this form to Defendant, in Spanish as follows:

> **Officer Quinones**: Aquí dice que usted está dando permiso, que no te estamos amenazando para revisar el teléfono tuyo. ¿OK? Em…y también te leí los derechos tuyos, ¿verdad? Esto, los derechos quo yo te leía, eso mismo, que tienes el derecho de no decir nada, el derecho a un abogado, el derecho de umm…si no puedes o si no, el gobierno te da uno. Emm. ¿Y usted estuvo de acuerdo a cooperar con con nosotros, es verdad?
>
> (Here it says that you are giving permission, that we are not threatening you in order to go over your telephone. Ok? Um . . . and I also read you your rights, correct? This, the rights th[a]t I was reading to you, that same thing, that you have the right to say nothing, the right to an attorney, the right to erm . . . if you can't or if not, the government gives you one. Umm. And you were in agreement to cooperate with with us, is it true?)

---

[11] This form was referred to as Government Exhibit B during the hearing, but the Court will cite to the same form located at ECF No. 44-2 on the case docket.

**Defendant**: Si (Yes)

**Officer Quinones**: Aquí tú dices que "si" en español, porque tú no hablas inglés. (Here you say 'yes' in Spanish, because you don't speak English. And here your signature.)

. . .

**Officer Quinones**: Otra vez el permiso de revisar. (Once again the permission to review.)

**Defendant**: OK.

**Officer Quinones**: Y la vas a firmar, OK? Está en inglés, pero acá dice que das permiso para el agente revisar…toda la información sobre el caso.

(And you are going to sign, OK? (Sound of pen writing). It's in English, but here it says that you give permission for the agent to review . . . all the information about the case.)

Transcript of Client's Recorded Interview at 30-31.

Officer Quinones then asked Defendant for his phone passcode which appears on the "Consent to Search Cell Phone" form. *Id.* at 31-32; *see* ECF No. 44-2 ("Consent to Search Cell Phone") at 1. Officer Quinones then directed Defendant to sign and date the form, stating, in Spanish, that it was 5:48 p.m. Transcript of Client's Recorded Interview at 32. After Officer Quinones noted the time of 5:48 p.m., the interview and its recording concluded shortly thereafter:

**Agent Edwards**: Alright so…I am going to…

**Officer Quinones**: That's his waiver.

**Agent Edwards**: End the recording. Does he have any other questions for us?

**Officer Quinones**: Tiene alguna pregunta? (Do you have any question?)

**Agent Edwards**: We'll talk a little bit more in a minute but…

**Officer Quinones**: Él dice que va a hablar un poquito más (He says he's going to speak a bit more.)

**Agent Edwards**: About today. Does he have any questions?

**Officer Quinones**: Sobre hoy, tiene alguna pregunta de lo que platicamos hoy? (About today, do you have any question about what happened today?)

**Defendant**: No, lo que quiero es de las muchachas. (No, what I want is, my concern are the girls.)

**Officer Quinones**: His only concern are the girls.

8

**Agent Edwards**: OK, So its 5:48 on November 1st at BNI. This will conclude the interview.

*Id.* at 32-33.

### III.   LEGAL STANDARD

"The Fifth Amendment provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *United States v. Rought*, 11 F.4th 178, 186 (3d Cir. 2021) (quoting U.S. Const. amend. V). "The Supreme Court in *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] established a procedure for custodial interrogation designed to protect a detainee's Fifth Amendment right against self-incrimination." *Boyer v. Houtzdale*, 620 F. App'x 118, 124 (3d Cir. 2015). Pursuant to this procedure, law enforcement must notify a suspect of the following *Miranda* warnings prior to any questioning: (1) that the suspect  "has the right to remain silent"; (2) "that anything he says can be used against him in a court of law"; (3) "that he has the right to the presence of an attorney"; and (4) "that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). These *Miranda* warnings need not be given in the exact form described in the Supreme Court's 1966 opinion— "[t]he inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (cleaned up).

When the Government seeks to admit statements made by a suspect during a custodial interrogation, "[t]he government has the burden of proving by a preponderance of the evidence that a defendant was advised of his/her rights and voluntarily and knowingly waived them." *United States v. Lin*, 131 F. App'x 884, 886 (3d Cir. 2005) (citing *Lego v. Twomey*, 404 U.S. 477 (1972)). "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "The decision to waive one's Fifth Amendment rights must be the product of 'a deliberate choice to relinquish the protection those

9

rights afford.'" *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010)).

A court examining whether a suspect waived their Fifth Amendment rights must examine: (1) whether waiver was made voluntarily, as the product of a free and deliberate choice; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Whiteford*, 676 F.3d at 362 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). To determine whether a statement was given voluntarily, a court must look at the totality of the circumstances, including the suspect's background and experience and whether there was any coercive police activity. *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). "*Miranda* rights will be deemed waived only where the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension." *United States v. Sriyuth*, 98 F.3d 739, 749 (3d Cir. 1996) (cleaned up) (citations omitted).

## IV.    DISCUSSION

Defendant seeks to suppress, pursuant to Federal Rule of Criminal Procedure 12(b), the statement he gave to law enforcement officials on November 1, 2022 in which he admitted to having been contacted by persons to receive boxes from Mexico and getting paid for receiving those boxes which contained drugs. ECF No. 42 at 10. The Government does not seek to introduce any statements made by Defendant before 5:21 p.m. ECF No. 44 at 4.

The parties do not dispute that Defendant was in custody at the time of the interrogation. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 4:20-25. Therefore, at issue is whether the Government has established that: (1) law enforcement officers properly advised Defendant of his *Miranda* rights

prior to the custodial interrogation that began at 5:21 p.m.; and (2) Defendant voluntarily and knowingly waived his *Miranda* rights prior to the interrogation beginning at 5:21 p.m.

### A.  The Government's witnesses are credible

As an initial matter, the Court finds credible the testimony of Officer Quinones and Agent Edwards, and credits their version of events. Officer Quinones has 30 years of experience as a Philadelphia police officer. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 8:13-17. She has been assigned to the Narcotics Bureau for the past 28 years, including 10 years with the DEA Task Force before her present assignment with the United States Postal Inspection Service as a Task Force officer. *Id.* at 8:21-9:1. She presently works with Task Force officers assigned to Homeland Security, as well as BNI, an entity of the Attorney General's Office of Pennsylvania. *Id.* at 9:2-16. As to her ability to communicate with Defendant, Officer Quinones is a fluent Spanish speaker, having been raised in a Spanish-speaking household, and can both read and write in Spanish. *Id.* at 9:17-10:1. Agent Edwards has eight years of experience in his current role in the Department of HSI where he investigates drug cases. *Id.* at 67:9-15.

The Court does not find credible the testimony of Defendant who testified to, what defense counsel referred to as, a "vast difference in terms of what happened on November 1st." [12] *Id.* at 113:8-9. First, Defendant's testimony contained a glaring contradiction. While Defendant testified that he did not receive the *Miranda* form until after the 27-minute recorded interview (*id.* at 95:5-7; 97:9-11; 103:16-18) and that he did not know that the 27-minute interview was being recorded (*id.* at 96:7-97:8), he also testified that Officer Quinones told him to sign the *Miranda* form before

---

[12] As an example, Defendant testified that Officer Quinones presented the *Miranda* form to him but never told him to read it, that Officer Quinones directed him to put his initials in various places on the form, and that Officer Quinones did not read the form to Defendant. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 94:23-95:1; 101:23-102:1; 103:10-11.

the recording. *See id.* at 94:5-6 (testifying that Officer Quinones said "'Okay, sign this if you're giving your consent so we can record it'" to which Defendant replied "'Yes, that's fine.'").

Second, Defendant's argument and testimony that the Government "manipulated" recordings lessens his credibility.[13] *See id.* at 98:1-17; 99:18-21; 100:18-19. Defendant's testimony regarding this issue included numerous nonresponsive and illogical statements. For example, when counsel for the Government asked Defendant whether it was Defendant's testimony that two recordings were made, Defendant searched for a CD in a paper folder and stated "I don't know what happened. But anyway the recording that's there, it's not supposed to be," continuing that he received a recording on April 4 that was between three and six minutes long, and that "[t]he recording that was there is not supposed to be there." *Id.* at 100:20-101:9. Defendant also failed to give responsive answers to questions asked of him regarding other issues.[14]

---

[13] Defendant testified that he was interrogated in an initial recording (not the 27-minute recording played in Court) during which he was asked "'But what were you expecting was coming in that box?'" and to which Defendant replied "'Well, it might not have been a picture of Jesus Christ, but it wasn't drugs.'"" ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 95:22-96:2-6. Defendant testified that his prior attorney, Timothy Wright, Esq., visited Defendant and played him the initial recording which was "edited and manipulated" as, instead of having Defendant's reply referencing Jesus Christ, his reply to the question on the recording was merely "drugs." *Id.* at 98:1-17; 99:18-100:11. Defendant testified that he has attempted "many times with [his] lawyer to get a copy of the audio, or at least to get a copy of the examination [his prior attorney] made of the audio," but that such recording was never given to Defendant. *Id.* at 98:13-17.

The Court finds no evidence of manipulation, but regardless, notes that the 27-minute interview containing Defendant's statements that the Government seeks to introduce does not contain any question regarding a box, and therefore does not contain the specific question and answer that Defendant claims was manipulated.

[14] As an example, Defendant testified that Agent Edwards handcuffed Defendant, put Defendant in Agent Edwards' black van, and attempted to communicate with Defendant via Google Translate while driving (ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 105:9-25; 107:16-20) after Agent Edwards testified that he did not arrest Defendant (*id.* at 83:15-21). When counsel for the Government asked Defendant whether it was Defendant's testimony that Officer Quinones and Agent Edwards were untruthful, Defendant said "What I'm saying isn't the truth is when I signed" (*id.* at 107:25)—not affirming that Defendant believed that Agent Edwards was not telling the truth. Counsel for the Government again asked whether it was Defendant's testimony that Agent Edwards did not tell

Third, Defendant argues that there was a "second tape [which] was never turned over to defense counsel in violation of discovery requirements." ECF No. 42 at 3. The Government denies that it has withheld any evidence and represents that no other recording exists aside from the one provided to Defendant. ECF No. 44 at 4. Further, Officer Quinones testified that only one recording of Defendant was made on the day of Defendant's arrest. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 32:22-24. The Court finds no reliable evidence that any additional recording exists.

### B. Defendant was properly advised of his *Miranda* rights prior to interrogation

The Government has established that law enforcement officers properly advised Defendant of his *Miranda* rights prior to their custodial interrogation of Defendant.

The Court does not find credible Defendant's argument that law enforcement agents did not read Defendant his *Miranda* rights before they began the interrogation. *See* ECF No. 42 at 7. Officer Quinones testified that at 5:15 p.m. she began reading Defendant his *Miranda* rights aloud in Spanish, while she and Defendant both looked over the form. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 25:11-13; 52:20-53:3; *see also* Report of Investigation at 2 ("Before the recording started, Detective Quinones read VENTURA his Miranda Rights aloud in the Spanish language. VENTURA explained he understood his rights and would be willing to answer questions."). Moreover, at the beginning of the recorded interview, Officer Quinones referred to having had read Defendant his rights. Transcript of Client's Recorded Interview at 1. Officer Quinones' reading aloud of the *Miranda* rights cures any threat of a deficiency in the recitation of *Miranda*

---

the truth at the hearing to which Defendant replied "The thing is, there were questions they weren't asked." *Id.* at 108:4-7. Only after the third such question by the Government did Defendant state "There were a lot of lies, mostly by Robert Edwards." *Id.* 108:8-10. On redirect, Agent Edwards testified that he was approximately a 15 to 20-minute drive away from Defendant at the time of Defendant's arrest, that he does not drive a black van, that he did not transport Defendant, and that he never had a conversation with Defendant via Google Translate. *Id.* at 109:15-110:11.

rights that Defendant may argue based on (1) Officer Quinones not asking Defendant whether he read and wrote Spanish (ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 52:17-19); and (2) Defendant testifying that he cannot read without his glasses which he did not have with him during the interrogation (*id.* at 102:4-20).

The Court further rejects Defendant's argument that Officer Quinones did not complete her recitation of the *Miranda* warnings. During the recorded interview, Officer Quinones stated the following: "[W]hen I was reading him his rights. He stopped me, he says that . . . umm. He says that the people he would be cooperating [against] are from Mexico. . . . And, I, I told him . . . well actually . . . I told that to [Agent] Martin [Essilfie]—he said that['s] fine, we will deal with it. . . . He still decided he wanted to cooperate so." Transcript of Client's Recorded Interview at 1. Defendant argues that these statements constitute an admission by Officer Quinones that "she did not complete the *Miranda* warnings before the Defendant began to speak," and "[t]hus, the Defendant did not hear all of his rights, much less acknowledge he understood them, as the law requires." ECF No. 42 at 8. Defendant further argues that "[t]he fact that the defendant stopped the officer while she was reading him his rights proves that the waiver was not complete and therefore not knowingly waived because it was incomplete." ECF No. 46 at 1-2; *see also* ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 115:12-18 (defense counsel arguing that Officer Quinones did not "go back and say anything about when we restarted again, or anything to that effect"). However, this argument rests on an unsupported assumption that once Defendant stopped Officer Quinones during her recitation of the *Miranda* rights, she never continued reciting these rights. In fact, Officer Quinones testified that she read to Defendant all of the rights included on the form entitled "Notificacion De Sus Derechos y Renuncia" (Notification of Your Rights and Waiver) (ECF No.

42-3) which contains all the requisite *Miranda* warnings. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 25:4-7.

The Court further rejects Defendant's argument that his *Miranda* waiver was not made "knowingly" due to Officer Quinones' incorrect recitation of his *Miranda* rights.[15] Specifically, Defendant argues that because Officer Quinones "incorrectly state[d] if the Defendant does not have an attorney, the government will give him one," as opposed to the Court, Defendant "could have easily (mistakenly) believed a biased attorney would be given by the very entity prosecuting the defendant" and "[t]hus, the defendant could interpret that this attorney was not representing his interests." ECF No. 42 at 8-9. Defendant's argument is a red herring. Officer Quinones' misstatement that Defendant's attorney would be appointed by the Government and not the Court occurred in the context of explaining the Consent to Search Cell Phone form to Defendant. This occurred *during* the recorded 27-minute-long interview, *after* Defendant had already been advised of, and had waived, his *Miranda* rights. Moreover, the Government does not seek to introduce any contents of Defendant's cell phone. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 5:9-15.

Defendant similarly conflates the initial *Miranda* form with the Consent to Search Cell Phone form when, referring to the *Miranda* form, stating "Remarkably, the form has a time written at the top of 5:15PM; though the interrogation begins at 5:21PM, the audio clearly demonstrates the form was not signed until the end of the interrogation (which would have been well after 5:15PM)." ECF No. 42 at 8. At oral argument, defense counsel repeated this argument, adding that "perhaps there was a mistake in the time. Or perhaps an officer wanted to do the correct time so that she wouldn't get in trouble for not having done the *Miranda* form ahead of time." ECF No.

---

[15] Officer Quinones stated "[Y]ou have the right to say nothing, the right to an attorney, the right to erm…if you can't or if not, the government gives you one." Transcript of Client's Recorded Interview at 30.

48, Oct. 4, 2023 Hr'g. Tr. 113:24-114:2. However, there is nothing to suggest that the times listed on the *Miranda* form were incorrect, much less that Officer Quinones intentionally wrote down an incorrect time. Officer Quinones reviewed the *Miranda* form with Defendant beginning at 5:15 p.m. and ending at 5:21 p.m., before the recording began. *Id.* at 25:11-25. The audio recording does not "clearly demonstrate" that the *Miranda* form was not signed until the end of the interrogation. The form that was signed toward the end of the recorded interrogation was the Consent to Search Phone form which includes the time of 5:48 p.m. ECF No. 44-2. Defendant argues that the time of 5:48 p.m. "is impossible" and that "somebody's time is off" because "if [Officer Quinones] puts the time as 5:48 while she's doing that form with [Defendant] before the conclusion of the recording, we still have three more pages before the recording concludes," referring to the fact that the recording also ended at 5:48 p.m. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 114:5-23. However, the "three more pages" of the recording following Officer Quinones' writing of "5:48 p.m." on the form consist of the following only:

> **Agent Edwards**: Alright so…I am going to…
>
> **Officer Quinones**: That's his waiver.
>
> **Agent Edwards**: End the recording. Does he have any other questions for us?
>
> **Officer Quinones**: Tiene alguna pregunta? (Do you have any question?)
>
> **Agent Edwards**: We'll talk a little bit more in a minute but…
>
> **Officer Quinones**: Él dice que va a hablar un poquito más (He says he's going to speak a bit more.)
>
> **Agent Edwards**: About today. Does he have any questions?
>
> **Officer Quinones**: Sobre hoy, tiene alguna pregunta de lo que platicamos hoy? (About today, do you have any question about what happened today?)
>
> **Defendant**: No, lo que quiero es de las muchachas. (No, what I want is, my concern are the girls.)
>
> **Officer Quinones**: His only concern are the girls.
>
> **Agent Edwards**: OK, So its 5:48 on November 1st at BNI. This will conclude the interview.

Transcript of Client's Recorded Interview at 32-33.

The recording of the interview demonstrates that this interaction occurred in just under 30 seconds (*see* Gov't Ex. E)—all within the same minute that Officer Quinones noted that it was 5:48 p.m. and wrote down that time on the Consent to Search Phone form.

### C.  Defendant voluntarily and knowingly waived his *Miranda* rights

The Government has established that, after being advised of his *Miranda* rights, Defendant voluntarily and knowingly waived these *Miranda* rights prior to the interrogation that occurred between 5:21 p.m. and 5:48 p.m. The Court finds that Defendant, a Spanish speaker, had a requisite level of comprehension of the rights he could voluntarily waive, and the consequences of waiving those rights, as Officer Quinones read aloud to Defendant his *Miranda* rights in Spanish. Moreover, the Court finds no evidence of coercive police activity.

Defendant argues in his brief that "the form does not ask whether the Defendant understands his rights." ECF No. 42 at 10. However, this argument is another red herring as Defendant is presumably referring to the Consent to Search Phone form (s*ee* ECF No. 44-2) and the Government does not seek to introduce any contents of Defendant's cell phone. ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 5:9-15. The *Miranda* form which Officer Quinones read aloud prior to the recorded interrogation did ask, as to each *Miranda* right, whether Defendant understood and voluntarily waived the right. ECF No. 42-3. Defendant wrote either his initials or the word "si" (yes) after each of these questions, below each *Miranda* right. He then signed his name and wrote the date. *Id.*; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 26:4-28:25. Defendant argues that he "did not know he could stop the interrogation at any time by asking for an attorney. Nor did he know he was entitled to an attorney if he could not afford one." ECF No. 42 at 11. But Officer Quinones explicitly read to Defendant all his rights including his "right to consult with a lawyer before any questions and have one present during [his] questioning" and that "[i]f [he] can't afford an attorney,

one will be afforded to [him] before any questions being asked of [him] if [he] desire[s]." ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 28:2-15; *see* ECF No. 42-3.

As this Court previously stated, *supra*, it does not find credible Defendant's assertion that he signed the *Miranda* form after the conclusion of the interrogation. *See* ECF No. 42 at 9; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 95:5-7; 97:9-11; 103:16-18. Defendant himself testified that Officer Quinones told him to sign the *Miranda* form "'if you're giving your consent so we can record it'" to which Defendant replied "'Yes, that's fine.'" *Id.* at 94:5-6. Officer Quinones testified that she "went over [the *Miranda* form] with [Defendant], read it, and then [] asked him to initial, and whether it was—if he—if he agreed, write 'Yes' in the language that he knew, which is Spanish, and he did." *Id.* at 25:4-7. Defendant wrote either his initials or the word "si" (yes) after each question, and then signed his name and wrote the date. ECF No. 42-3; ECF No. 48, Oct. 4, 2023 Hr'g. Tr. 26:4-28:25. Officer Quinones further testified that the *Miranda* form was completed at 5:20 p.m., as noted on the *Miranda* form. ECF No. 48, Oct. 4, 2023 Hr'g. Tr.  31:23-32:1; ECF No. 42-3.

## V.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Suppress (ECF No. 42) in full. An Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**

18