IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | No. 22-CR-430 |
| | : | |
| **JUAN CARLOS VENTURA-AMPARO** | : | |
| *Defendant.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                    **SEPTEMBER 16, 2024**

### I.      INTRODUCTION

On May 28, 2024, Defendant Juan Carlos Ventura-Amparo ("Defendant") pled guilty to the charge of attempted possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One). *See* ECF No. 98. Before the Court is Defendant's Motion to Withdraw Guilty Plea, filed on July 19, 2024. ECF No. 108. For the reasons stated below, the Court will deny Defendant's Motion.

### II.      BACKGROUND AND PROCEDURAL HISTORY

Defendant was arrested on November 1, 2022, after Homeland Security Investigations ("HSI") Special Agents, the Pennsylvania Attorney General's Office, the Pennsylvania State Police, and the Philadelphia Police Department conducted a controlled delivery of two DHL shipping parcels containing fentanyl. ECF No. 1 ¶¶ 7, 14. Defendant had agreed to receive the two parcels from a man named Omar in exchange for $1,000 per kilogram of drugs. *Id.* ¶ 15.

These parcels – one containing a sewing machine and the other a lawnmower – entered the United States from Mexico, first arriving in Cincinnati, OH, where they were intercepted by Customs and Border Protection (CBP). *Id.* ¶ 7. CBP detected lead-lined hidden compartments in

each parcel and found fentanyl concealed in the compartments. *Id.* The lawnmower concealed a 1.18 kilogram brick of fentanyl, while the sewing machine hid a 1.15 kilogram brick of fentanyl. *Id.* The parcel with the lawnmower was addressed to Dinorah Ramos at 4016 Loring Street, Philadelphia, and the other parcel with the sewing machine was addressed to Lorena Rojas at 515 West Erie Avenue, Philadelphia. *Id.*

The parcels and the fentanyl bricks were transferred to HSI in Philadelphia. *Id.* ¶ 8. Law enforcement took custody of the drugs and placed a sample (a few grams) of fentanyl into each parcel along with a court-authorized tracking device and trip wire that would alert agents when the parcels were opened at the Philadelphia addresses. *Id.* An undercover agent posing as a DHL delivery driver then delivered the parcels to the two addresses. *Id.* ¶ 9. On November 1, 2022, agents received an alert that the DHL parcel containing the sewing machine and sample fentanyl was opened inside of 515 West Erie Avenue. *Id.* ¶ 14. The agents executed their search warrant, issued the previous day, and took Defendant into custody. *Id.* ¶¶ 6, 14.

After Defendant was taken into custody, he was transported to the Bureau of Narcotics Investigation headquarters at the Pennsylvania Attorney General's Office in Philadelphia. *Id.* ¶ 15; ECF No. 48, Oct. 4, 2023, Hr'g. Tr. 14:12-13. Defendant waived his Miranda rights, ECF No. 44, Ex. A, and was interviewed by law enforcement with the assistance of a Spanish interpreter, *id.*, Ex. C. The Criminal Complaint filed by HSI Special Agent Edwards states that during the recorded interview, Defendant admitted that he had agreed to receive the two parcels containing drugs from a man named Omar in exchange for $1,000 per kilogram, amounting to two one-kilogram packages. ECF No. 1 ¶ 15. Defendant stated that he paid the residents of 4016 Loring Street and 515 West Erie Avenue $500 each for the use of their addresses. *Id.* Defendant stated that if law enforcement had not intervened, he had planned on giving the two kilograms of drugs to an

unknown person who would be traveling from Boston. *Id.* The value of the drugs that Defendant sought to possess was worth tens of thousands of dollars in street value. *Id.* at ¶16.

A grand jury indicted Defendant on November 30, 2022, charging him with attempted possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One). ECF No. 8.

Defendant's first attorney, Timothy Wright, was relieved on April 27, 2023, and Carina Laguzzi, Esq., was appointed as his new attorney. ECF No. 30. On September 5, 2023, Ms. Laguzzi filed a Motion to Suppress Defendant's recorded statement to law enforcement. ECF No. 42. After a hearing before this Court, at which Defendant testified, the Court denied the motion, finding that the Government's witnesses were credible; Defendant was properly advised of his Miranda rights prior to interrogation; and Defendant voluntarily and knowingly waived his Miranda rights. ECF No. 53. The Court also found Defendant's own testimony in support of his motion not credible or contradictory in several instances. *See, e.g., id.* at 4, 11, 12, 13, 18.

On February 5, 2024, Ms. Laguzzi moved to withdraw as counsel, asserting that Defendant was demanding her to file "frivolous/inappropriate" motions, as well as demanding "senseless items" that counsel found not relevant to the defense and a waste of resources. ECF No. 65. After a hearing, the Court granted Ms. Laguzzi's motion, and Coley O'Brien Reynolds, Esq., was appointed as Defendant's third counsel. ECF No. 66. Trial was scheduled for May 28, 2024, after four prior continuances.[1] ECF No. 69.

On the day of trial, May 28, 2024, the parties convened for voir dire and jury selection. After the Court held a brief pretrial conference in Courtroom 11B, the Court recessed, and the jury panel was ordered to the 11th floor and lined up in the hallway to enter the Courtroom. When the

---

[1] Trial was previously scheduled for March 27, 2023 (ECF No. 13); July 17, 2023 (ECF No. 24); November 6, 2023 (ECF No. 36); and March 18, 2024 (ECF No. 52).

Court resumed session, Defendant stated that he wished to enter a guilty plea. ECF No. 112, May 28, 2024, Hr'g. Tr. 6:19-22 ("Tr."). After an extensive and thorough Federal Rule of Criminal Procedure 11 colloquy, Defendant pled guilty to attempted possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One). ECF No. 98. Sentencing was scheduled for September 17, 2024. ECF No. 101.

On July 19, 2024, Defendant filed the instant motion seeking to withdraw his guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(B), claiming that (1) he is innocent; (2) he only pled guilty because he feared the risk of a ten-year mandatory sentence; and (3) the government would not be prejudiced by the withdrawal of his guilty plea. ECF No. 108. The Government filed a Response in Opposition on August 15, 2024 (ECF No. 114), and the motion is now ripe for consideration.

### III.  LEGAL STANDARD

Withdrawal of a guilty plea is not an absolute right. *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). Acting on a whim, changing one's mind, or fearing punishment are not viable reasons to burden the court with trying a defendant who has previously acknowledged his guilt in a plea. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Rather, a defendant may withdraw a guilty plea before sentencing only if they meet the "substantial" burden of showing "a fair and just reason for requesting the withdrawal*." United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003); Fed. R. Crim. P. 11(d)(2)(B).

A district court undertakes a three-pronged test to determine if there is a fair and just reason for withdrawing a guilty plea: (1) whether the defendant asserts their innocence; (2) whether the government would be prejudiced by withdrawal of the plea; and (3) the strength of the defendant's reason to withdraw the plea. *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989) (citation omitted).  A court considers all factors, but no single factor is mandatory. *United States v. Wilder*,

4

134 F. App'x 527, 528 (3d Cir. 2005) (citing *Jones*, 336 F.3d at 252-55). Rather, the court balances each factor, and defendant's failure to establish one factor does not necessarily quash the motion. *Id.* However, if a defendant fails to meet his burden under factors one and three, the government does not need to show prejudice under factor two. *United States v. Fuller*, 311 Fed. App'x 550, 552 (3d Cir. 2009) (citing *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995)).

A "credible assertion[] of innocence by the defendant [is] of considerable significance" to the court. *Gov't of V.I. v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) (citation omitted). Accordingly, a defendant may not simply claim his innocence. "Bald assertions of innocence" are not enough to withdraw a guilty plea. *United States v. Kwasnik*, 55 F.4th 212, 217 (3d Cir. 2022) (citation omitted). Instead, a defendant's assertion "must be buttressed by facts in the record that support a claimed defense." *Id.* (quoting *Brown*, 250 F.3d at 818). A defendant must provide a compelling reason as to "why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea." *Kwasnik,* 55 F.4th at 217 (internal citation omitted). Similarly, whether a defendant asserts his innocence in good faith is a "preeminent issue[]" for the court to decide. *Berry*, 631 F.2d at 220 (citations omitted). Asserting one's innocence as a defense tactic or because a defendant fears prison or deportation, for example, "are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already" admitted his guilt. *Jones*, 336 F.3d at 252 (quoting *Brown*, 250 F.3d at 815 (citations omitted)).

Finally, a motion to withdraw a guilty plea made before sentencing should be liberally construed and freely granted. *Berry*, 631 F.2d at 219 (citing *United States v. Young*, 424 F.2d 1276, 1279) (3d Cir. 1970) ("This Court as well as other Courts of Appeal have … enunciated the

principle that the withdrawal of a guilty plea before sentence is imposed should be 'freely allowed.'" (citations omitted)); *United States v. Stayton*, 408 F. 2d. 559, 560 (3d Cir. 1969)).

## IV. DISCUSSION

Defendant moves to withdraw his guilty plea because he claims he is innocent of the charge in Count I – attempted possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. ECF No. 108 at 4. He argues that his "credible actual innocence" is the strongest of reasons to justify the withdrawal of his plea. *Id.* at 5. He also asserts that the government would not be prejudiced if the case were to go to trial. *Id.* at 6. The Government, on the other hand, asserts that Defendant's assertion of innocence is not credible and that he is using this motion to advance a new theory of defense to a jury. ECF No. 114 at 6, 9. Both parties have filed timely and comprehensive briefs, which the court has closely reviewed and will summarize here. The Court will then impart its own view of the parties' arguments, finding in favor of the Government.

**A. Defendant's Motion**

As stated, Defendant asserts his innocence. He argues that the evidentiary record shows that he was an "unwitting participant" in the scheme to traffic drugs from Mexico to Philadelphia via Cincinnati. ECF No. 108 at 4. He avers that he agreed to help someone ship something into the United States, but that he did not know for sure if it was drugs. *Id.* He told the officers that the packages contained drugs only after learning upon his arrest that HSI was investigating drug trafficking. *Id.* Further, he contends, he admitted his involvement to the officers only because he wanted to keep the two women involved in the case out of trouble. *Id.* at 5. Based on these averments, Defendant now asserts his innocence, which he says is the strongest of reasons to justify

his withdrawal of his guilty plea. *Id.* He adds that his guilty plea will result in deportation hearings against him, which would be "manifestly unjust considering his actual innocence." *Id.*

Defendant explains that he pled guilty on the day of his trial because he feared that if was convicted at trial, he would face a mandatory minimum sentence of ten years. *Id.* at 6. He believed that if he pled guilty, his sentence might be adjusted downward because he had no criminal history and would be "safety-valve eligible." *Id.* Now, after reflection, he wishes to assert his innocence and proceed to trial. Finally, Defendant does not believe that granting his motion will prejudice the government. *Id.* at 6-7.

**B. Government's Response**

The Government's position is clear. Defendant's motion is nothing more than "buyer's remorse," "gamesmanship," "continued unwillingness to accept the reality that he committed a crime," and "more of the same." ECF No. 114 at 3. The Government submits that if the Court were to permit Defendant to withdraw his guilty plea, this would reward Defendant for lying to the Court under oath. *Id.* Twice now, the Government asserts, Defendant has admitted his guilt – first in his post-arrest statement to law enforcement and again to the Court at his guilty plea hearing. *Id.* at 4. The Government's brief includes key excerpts from the Federal Rule of Criminal Procedure 11 plea colloquy that incorporated Defendant's post-arrest statement to law enforcement, in which he admitted his guilt:

> At approximately 5:15 [p.m.], [the defendant] was read his Miranda rights in Spanish by Police Officer Madeline Quinones, who was a fluent Spanish speaker.
>
> The defendant agreed to waive his rights and speak to investigators. During the interview, the defendant explained that he met a man by the name of Omar who advised that he would be sending the defendant two separate parcels by way of DHL. He stated that each parcel would have drugs concealed

7

within and would be coming from Mexico. The defendant agreed to receive the parcels in exchange for $1,000 per kilogram.

The defendant explained that he asked the residents of 4016 Loring Street and 515 West Erie Avenue to use their residences and their addresses to receive these parcels. The residents agreed, and they were each paid $500 by the defendant for his use of their residence.

The defendant explained that he was going to bring the parcel from 4016 Loring Street to 515 West Erie Avenue and open the parcel there. He explained that when he called the one resident at 4016 Loring Street upon delivery, she explained that he would have to wait until she picked up her kids from school. The defendant said that he went back to 515 West Erie Avenue and began attempting to find the one-kilogram package of drugs inside the parcel.

He explained that he was having trouble locating the kilogram package inside of the sewing machine, at which time agents arrived at his door. He stated that if law enforcement had not intervened, the next step of the plan was for him to turn the kilograms over to an unknown person who would be traveling from Boston, Massachusetts.

The defendant identified the man in Mexico who he knows as Juan Carlos as the one who paid him to accept the packages and transfer them. However, when agents forcibly entered the residence to arrest the defendant upon opening the package, he was on the phone with Juan Carlos, and it became obvious that the police were entering his location so further cooperation about (sic) Juan Carlos was not possible.

Before his statement to investigators, the defendant was presented with a Miranda waiver form that confirmed his understanding of his constitutional rights. He signed and dated the form, which was presented to him in his native language of Spanish. The form indicated that it was presented to him at 5:15 p.m., and he signed it and dated it at 5:20 p.m.

Tr. at 28:8 to 29:24.

Defendant agreed that this factual basis for his guilty plea as presented by the Government was accurate:

8

| | |
|---|---|
| **THE COURT:** | Okay. So, Mr. Ventura-Amparo, did you hear what the attorney for the Government said the Government would show at trial? |
| **MR. VENTURA-AMPARO:** | Yes, I heard it, Your Honor. |
| **THE COURT:** | Is that what happened? |
| **MR. VENTURA-AMPARO:** | Will say yes, Your Honor. |
| **THE COURT:** | Did you do what the Government says you did? |
| **MR. VENTURA-AMPARO**: | Yes. |

*Id.* at 30:14-22

The Government reminds the Court that Defendant attempted once before to retool his defense strategy by filing a Motion to Suppress Evidence, specifically his statement to law enforcement and the contents of his mobile phone. ECF No. 42. The Government recounts that at the suppression hearing, Defendant attempted to "hoodwink" the Court by testifying that the content of the interview recording was "manipulated" and that he signed the Miranda form only after he gave his statement to law enforcement. ECF No. 114 at 4, 8. Defendant's present claim – that he was an unwitting participant in the trafficking scheme – is just as "illogical as his testimony during his suppression hearing" and contradicts previous statements. *Id.* at 4.

In sum, the Government argues that Defendant has failed to meet his substantial burden of showing a fair and just reason for moving to withdraw his guilty plea. The Government believes that the evidentiary record makes clear that Defendant is not actually innocent, that his reasons for withdrawing his plea are neither strong, fair, nor just, and that Defendant's motion is yet another cynical ploy to delay his sentencing. Finally, because Defendant has not met his substantial burden

of demonstrating a fair and just reason for withdrawing his guilty plea, the Government does address whether the Government would be prejudiced by withdrawal.

**C. Analysis**

The Court agrees with the Government that Defendant's motion to withdraw his guilty plea is without merit and should be denied.

Defendant asserts that he is innocent because he was an "unwitting participant" in the scheme to traffic drugs from Mexico to Philadelphia via Cincinnati. ECF No. 108 at 4. He explains that (1) he did not know for sure that the shipments he received contained drugs, and (2) he only admitted his involvement to cover for the women paid $500 for the use of their addresses. To assess the validity of Defendant's assertion of innocence, the Court now looks at the facts in the record that buttress these claims. *Brown*, 250 F.3d at 818 (citation omitted). It is the Defendant's burden to explain why he asserts innocence now, in contradiction to his previous admissions of guilt. *Jones*, 336 F.3d at 253 (citation omitted).

Defendant presents no evidence to support his claims of ignorance or chivalry, and he does not deny the other facts laid bare in his post-arrest statement and guilty plea admissions – that he was in contact with a man named Omar who would be sending to parcels from Mexico containing concealed drugs; that Defendant agreed to receive the parcels in exchange for $1,000 per kilogram of drugs; that a man named Juan Carlos in Mexico agreed to pay him to accept and transfer the parcels; that he made arrangements for the two women to receive the parcels at their addresses in Philadelphia; that he attempted to locate the drugs inside the shipped sewing machine and was on the phone with Juan Carlos while doing so; and that if law enforcement had not intervened, he would have turned the drugs over to someone traveling from Boston. Tr. 28:8-29:24.

These inculpatory facts speak for themselves. Defendant's assertion that he was an unwitting participant in the drug trafficking scheme and that he only admitted his guilt to protect the two women is not believable. Defendant has pointed the Court to no facts on the record that would buttress his claim of innocence or resolve the contradiction in asserting his innocence today against his previous admissions of guilt. On these measures, Defendant had not met his burden of showing a fair and just reason for requesting the withdrawal. *Jones*, 336 F.3d at 252.

Further, it is noteworthy that Defendant entered his guilty plea on the day he was scheduled for trial, after four prior continuances and two changes of counsel. All parties were fully prepared to try the case and uphold Defendant's 6th Amendment right to a public trial by an impartial jury. U.S. Const. amend. VI. On the morning of trial, a panel of potential jurors waited in the Courthouse while the parties gathered in Courtroom 11B at 9:15 a.m. for a brief pretrial conference. ECF No. 98. The Government put on the record the charges Defendant faced and the mandatory sentence of ten years if he were convicted. Tr. at 3:18-21. The Government also explained the sentencing guideline calculations if Defendant were to plead guilty before trial, noting that the mandatory minimum of ten years would not apply because Defendant qualified for certain deductions, but that the Court could impose any sentence within its discretion. *Id.* at 3:22-4:15. The Court then recessed. *Id.* at 6:6.

During the recess, the jury panel was ordered to the 11th floor and lined up in the hallway outside of the Courtroom. When the Court resumed session, the Honorable Chad F. Kenney stated that it was his understanding that instead of proceeding to trial, Defendant would plead guilty to Count I – attempted possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C., §§841(a)(1), (b)(1)(A), and 846. *Id.* at 6:19-21. Defendant said yes, *id.* at 6:22, and was placed under oath, *id.*

at 7:16-8:2. The Court then commenced an extensive and lengthy plea colloquy, with the assistance of two federally certified interpreters placed under oath, *id.* at 6:23-7:9.

As the transcript shows, the Court took full measures to ensure that Defendant's guilty plea complied with Fed. R. Crim. P. 11(b), which outlines the steps a court must take when considering and adopting a defendant's guilty plea. Rule 11(b) requires the Court to address a defendant personally in open court and, during this colloquy, inform the defendant of the rights he retains and those he waives, the charges to which the defendant is pleading, and applicable penalties and sentencing considerations. Fed. R. Civ. P. 11(b)(1). This Rule 11 colloquy ensures that a defendant is "advised by the court of the consequences of pleading guilty." *United States v. Rivera*, 62 F.4th 778, 787 (3d Cir. 2023). During the colloquy, the defendant "admits to his guilt as well as the facts relating to his criminal conduct . . . . [and thereafter] has no reason to believe he can freely withdraw his plea." *Id.* (citation omitted). The Court must ensure that the plea is voluntary and that there is a factual basis for the plea. Fed. R. Civ. P. 11(b)(2), (3).

As the colloquy commenced, the Court asked Defendant basic identifying questions, affirmed that he was not on any medication or drugs, and verified that he was alert and understanding the proceedings. Tr. at 8:13-9:12. The Court then reviewed the Indictment, the nature of Count I, and the maximum penalty, including imprisonment, supervised release, and other possible fines and assessments, and the sentencing guidelines. *Id.* 9:14-14:17. The Court addressed the rights Defendant retained and those he waived by pleading guilty, and made sure Defendant understood:

> **COURT:** Knowing what your rights are, and knowing that you're giving up those rights by pleading guilty, do you want to give up your right to a trial and plead guilty?

      **MR. VENTURA-AMPARO:**      `Yes.`

*Id.* 19:13-16.

      The Court then asked the Government to state the elements of Count I and the facts the Government would submit to the jury to establish those elements. *Id.* at 19:17-23:11. The Government engaged in a lengthy and detailed recitation of the investigation by HSI and CBP to track the two parcels with hidden fentanyl, from Mexico to Philadelphia via Cincinnati. *Id.* at 23:22-24:22. The Government recounted how, after agents received an alert that the sewing machine had been opened at 515 West Erie Avenue, agents entered the residence with search warrants issued a day earlier, *id*. at 24:23-25:5, and arrested Defendant and took him into custody, *id.* at 27:25-28:5

      The Government then summarized Defendant's post-arrest statement to law enforcement, as quoted by the Government in their brief (ECF No. 114), *supra*. Defendant acknowledged that he did what the Government said he did, *id.* at 30:14-22, and entered his guilty plea, *id.* at 32:5-12. The Court confirmed with Defendant that everything he told the Court was the truth. *Id.* at 32;18-19. The Court accepted Defendant's plea and adjudged him guilty of Count I. *Id*. at 32:20-21. The hearing lasted 51 minutes. ECF No. 98.

      The Rule 11 colloquy properly informed Defendant of the rights he retained and waived, the elements of the charge against him, and the factual basis of the charge. Defendant had full opportunity to change his mind and present his case to the jury waiting in the hallway. There is simply no evidence that Defendant did not enter his plea voluntarily or that he did not understand the consequences of a guilty plea. On this latter point, for instance, Defendant laments that his guilty plea will result in deportation hearings against him, which would be unjust considering his innocence. But during the Rule 11 colloquy, the Court addressed this consequence head on:

| | |
|---|---|
| **THE COURT:** | You understand that what you're pleading to is a felony, right? |
| **MR. VENTURA-AMPARO:** | Yes. |
| **THE COURT:** | And that as a - - as a result of the plea, you could be deported. Do you understand that? |
| **MR. VENTURA-AMPARO:** | Yes. |
| **THE COURT:** | Do I have to - - do I have to inform Mr. Amparo anything more on that in terms of the plea and the potential for being deported? |
| **[AUSA] MR. ASHENFELTER:** | With that would be the loss of certain valuable civil rights: the right to hold office; the right to vote; the right to possess a firearm. |
| **THE COURT:** | All right. Do you understand all that? |
| **MR. VENTURA-AMPARO:** | Yes, I understand. |

Tr. at 15:4-17.

In sum, the Court finds that Defendant's assertion of innocence is not credible and that he is without a fair and just reason warranting withdrawal of his guilty plea. Accordingly, the Court need not consider whether withdrawal of Defendant's guilty plea would prejudice the Government. This case has endured numerous delays, and it is the Court's view that Defendant's motion is yet another tactic to stall the fair and just outcome of this case and that this motion serves only to sap limited judicial resources.

## V.    CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Withdraw his Guilty Plea (ECF No. 108). Defendant's sentencing remains scheduled for September 25, 2024, at 9:00 a.m. ECF No. 112. An appropriate order will be issued.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, J.**